1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                         NORTHERN DISTRICT OF CALIFORNIA

8

WILL DAVIS,
9
                    Plaintiff,                     Case No.  15-cv-02920-RS
10
        v.
11                                                 **ORDER DENYING MOTION FOR**
                                                   **CLASS CERTIFICATION**
NATIONSTAR MORTGAGE, LLC,
12
                    Defendant.
13

14

15                             I.  INTRODUCTION

16         Plaintiff Will Davis applied to defendant Nationstar Mortgage, LLC, for a modification of

17   his home loan.  Davis was approved for a so-called Trial Period Plan ("TPP") under which he was

18   required to make monthly payments at a reduced level for a number of months prior to permanent

19   modification of the terms of his loan.  Although Davis fully complied with the TPP and eventually

20   received a permanent modification, Nationstar advised various credit reporting agencies that the

21   loan was "delinquent" during the period the TPP was in effect.

22         Contending it was wrongful to report his loan as delinquent when he was making the

23   payments required by the TPP, Davis now seeks class certification to bring claims against

24   Nationstar for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et. seq.*,

25   and the California Consumer Credit Reporting Agencies Act ("CCRA"), Cal. Civ. Code §§ 1785

26   *et. seq.*  Because Davis has not shown the claims are suitable for class treatment, the motion must

27   be denied.

28

United States District Court
Northern District of California

## II.  BACKGROUND

In October 2013, Nationstar approved Davis for a TPP as a precondition for obtaining a permanent loan modification. At the time, the loan was current. Under the TPP, Davis was required to make three monthly payments of $1,820.72—slightly less than the $1,986.82 monthly payment then required under the loan terms.

The TPP disclosed how Nationstar would report the account to the credit reporting agencies during the course of the TPP:

> [Nationstar] will continue to report to credit reporting agencies the status of your loan as well as your entry into a Trial Period Plan, in accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association. In addition, your loan will be reported as paying under a partial or modified payment plan during the trial period. Credit reporting agencies generally consider entering into a plan with reduced payments as an increased credit risk. As a result, entering into a Trial Period Plan may adversely affect your credit score, particularly if you are current on your mortgage or otherwise have a good credit score.

Davis accepted the TPP and made the three reduced payments required by the plan. As provided for in the TPP, Nationstar reported Davis as paying under a modified payment plan and as delinquent during November and December 2013 because the modified payments were less than the full amount of the contractual payment.  In December 2013, Nationstar approved Davis for a permanent modification.

In January of 2015, Davis was denied approval for a credit card at Target.  He then disputed the Nationstar delinquency report through credit reporting agencies.  Nationstar investigated upon receiving notice of the dispute, and determined Davis should have been reported current in December 2013 because the permanent modification went into effect at the end of that month.  Nationstar therefore instructed the credit reporting agencies to delete the December delinquency.  Nationstar confirmed, however, that the November delinquency was accurate.  In doing so, Nationstar contends it was applying "industry standards," as set out in the reporting policies of the Consumer Data Industry Association ("CDIA").

Davis has not argued that Nationstar failed to follow CDIA standards.  He contends,

however, case law has established that TPPs represent binding contracts themselves, even prior to permanent loan modification.  *See*, *e.g.*, *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012); *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878 (9th Cir. 2013).  Davis reasons, therefore, that his compliance with the TPP rendered it improper to report his loan as delinquent.  Davis also points out that Nationstar did *not* report loans as delinquent during TPPs where it had offered loan modifications under the Home Affordable Modification Program ("HAMP").  Davis, however, acknowledges that his modification was not under HAMP, and that the action does not extend to any borrowers who received HAMP modifications.

Davis disputed the November 2013 delinquency report on several more occasions between February and May of 2015.  He contends Nationstar never agreed to delete it until he had retained counsel and decided to file this action.  Nationstar asserts it deleted the delinquency in conformance with a new policy it was then adopting to treat reporting under non-HAMP TPPs the same as under HAMP TPPs.

Davis proposes the following class definitions:

FCRA Class:

> All persons in the United States, who entered into a TPP pursuant to a non-HAMP mortgage modification with Nationstar, who were current on their mortgage payments, as demonstrated by Nationstar's records, prior to the time they initiated efforts to enter into a mortgage modification with Nationstar, whose consumer credit report from any of the major credit reporting agencies(Transunion, Equifax, Experian and Innovis) reflected an inaccurate consumer credit report inquiry, from two years prior to the filing of the complaint, to present.

FCRA Dispute Subclass:

> All FCRA Class members who thereafter disputed the inquiry to one or more of the major credit reporting agencies.

CCRA Class

> All persons in California, who entered into a TPP pursuant to a nonHAMP mortgage modification with Nationstar, who were current on their mortgage payments, as demonstrated by Nationstar's records, prior to the time they initiated efforts to enter

into a mortgage modification with Nationstar, and whose consumer credit report from any of the major credit reporting agencies (Transunion, Equifax, Experian and Innovis) reflected an inaccurate consumer credit report inquiry, from two years prior to the filing of the complaint, to present.[1]

## III. LEGAL STANDARDS

Rule 23 of the Federal Rules of Civil Procedure governs class actions. To obtain class certification, plaintiffs bear the burden of demonstrating that they have satisfied Rule 23(a)'s requirements. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

A "court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (internal quotation marks omitted). Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195.

If all four prerequisites of Rule 23(a) are satisfied, a court must also find that plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Here, plaintiff seeks certification under subsection (2) *and* subsection (3). Certification under subsection (2) is permissible where, "the

---

[1] Davis's complaint also asserts a claim under the Fair Debt Collections Practices Act, which he is not proposing for class treatment.

party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

A court may certify a class under subsection (3) if the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S. Ct. at 1191 (emphasis in original).

## IV.  DISCUSSION

### A.  FCRA Claim

Davis insists this action—where a relatively large number of consumers have suffered alleged injuries that may be too small to pursue individually—is exactly the type of case for which class treatment is both appropriate and crucial.  The fatal flaw in Davis's position, however, is that the FCRA—which once permitted *no* private right of action—only provides for a private right of action in limited circumstances, and those circumstances include elements not suited for class-wide treatment.

In the FCRA, section 1681s–2 sets out the "Responsibilities of furnishers of information to consumer reporting agencies." Specifically, the gravamen of Davis's quarrel with Nationstar is that it was *reporting* delinquencies that he contends had not occurred, as a matter of law.  Davis's allegations, if factually proven and legally sound, implicate underlined subsection (a) of §1681s–2, which is entitled, "Duty of furnishers of information to provide accurate information."  Subsection (a)(1)(A) expressly provides, "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the

information is inaccurate." Were Davis entitled to proceed under this provision, he might very well be able to show a class action to be feasible.

There is, however, no private right of action under subsection (a). *See* 15 U.S.C. § 1681s–2 (d). Davis, therefore, is bringing his claims under <u>subsection (b)</u>, which is entitled "Duties of furnishers of information upon notice of dispute," and which *is* subject to private enforcement. A claim under subdivision (b), however, does arise directly from the provision of inaccurate information to a consumer reporting agency. Rather, subsection (b) focuses on the duties an entity like Nationstar has to investigate and correct information *if and when* it receives notice *from a consumer reporting agency* that a consumer is disputing an item on the consumer's credit report.[2]

Despite acknowledging his claims arise under subsection (b), Davis's motion for certification barely touches on the elements plaintiffs must establish under that subsection, as

_____

[2] Subdivision (b)(1) provides:

After receiving notice pursuant to section 1681i (a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i (a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

United States District Court
Northern District of California

United States District Court
Northern District of California

opposed to subsection (a).  For example, Davis argues that class membership "may readily be determined by objective criteria," which he lists as, "whether (1) a consumer was reported as delinquent by Defendant (2) during the course of their entering into a loan modification program with Defendant, (3) who made timely payments pursuant to the terms of those modifications, (4) in the USA (or California)."   Davis asserts "[s]uch objective information can be readily determined using Defendant's records," and goes on to describe specific computer records he understands Nationstar maintains and the steps that would be necessary to compile a list of class members.

The "objective criteria" Davis lists, however, focus only on identifying those persons who were wrongfully reported as delinquent (under his legal theory).  Thus, at most that would only establish the class of persons entitled to bring claims under <u>subdivision (a)</u>, were there a private right of action thereunder.  The only persons entitled to bring claims under <u>subdivision (b)</u> are those who not only satisfy all of the "objective criteria" identified above, but who also then (1) disputed the delinquency reports through a consumer reporting agency, and (2) did not receive appropriate handling and remedies from Nationstar of those disputes.

Davis appears to be suggesting it is appropriate to presume that Nationstar treated *all* such disputes the way it treated his, given its contention that it was merely following its policy and industry standards, and that it was legally permissible for it to do so.  Even assuming such a presumption may be applied, it does nothing to help identify those persons who properly presented disputes in the first instance.  Nationstar has shown, and Davis has not rebutted it, that the process of determining who and how many people complained to consumer reporting agencies regarding delinquencies reported by Nationstar during non-HAMP TPPs on loans that were otherwise current requires an individual-by-individual review.

Even the very class definitions Davis proposes reflect the problem.  The primary FCRA definition refers exclusively to persons about whom allegedly inaccurate delinquencies were

reported.[3] While the FCRA "subclass" adds the element of a subsection (b) claim that class members must have disputed the report, it still does not focus on the matters that give rise to a defendant's liability.

Notably, cases Davis relies on do *not* involve certification of FCRA §1681s–2, subsection (b) claims against information furnishers such as Nationstar. *See*, *e.g.*, *Ramirez v. Trans Union*, 301 F.R.D. 408, 242-26 (N.D. Cal. 2014) (claim against *consumer reporting agency* under various subsections of FCRA §1681g); *Hawkins v. S2Verify*, 2016 WL 3999458, at *1 (N.D. Cal. July 26, 2016) (claims against *consumer reporting agency* under FCRA §§ 1681c, 1681e, 1681k, and 1681n). Davis's failure to recognize appropriately the nature of a §1681s–2, subsection (b) claim causes his motion for certification to fail on multiple fronts. He has not shown that individual issues of whether Nationstar conducted a reasonable investigation do not predominate. He has not shown the identity of class members is feasibly identifiable. He has not even shown the class to be sufficiently numerous.[4] As to his claim for injunctive relief, there is no dispute that Nationstar has changed its policy, and Davis has not shown a sufficient basis to conclude the conduct will be resumed if not enjoined. For all these reasons, Davis has not shown class treatment of the FCRA claim to be superior or even appropriate, and the motion must be denied.[5]

---

[3] Nationstar also complains the class-definition is impermissibly "fail-safe," because it only includes persons who had "inaccurate" entries on their credit reports, thereby making class membership dependent on a merits determination. *See Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) ("This is an improper fail-safe class that shields the putative class members from receiving an adverse judgment. Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment."). While that might be an issue if liability in a private action were permissible under subsection (a), the problem here is more fundamental.

[4] Davis asserts Nationstar stipulated as to numerosity of a California class for the CCRA claim, and that it is therefore reasonable to assume the nationwide FCRA claim is even larger. There is no indication Nationstar, however, ever stipulated as to numerosity with respect to anything other than the number of people who were reported as delinquent while in compliance with a non-HAMP TPP. As the discussion above reflects, that might be an appropriate class for a subsection (a) claim, but not for a subsection (b) claim.

[5] There is also at least a question as to whether Davis can show all or nearly all class members suffered *injury. See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The mere availability of statutory damages under the FCRA is not dispositive.

B. <u>CCRA claim</u>

Davis's claim under the CCRA at first blush might seem to present an easier road to recovery because it *does* provide a private right of action for providing inaccurate information to a consumer reporting agency.  The CCRA, however, requires a showing of *actual damages.*  While a need for individualized damages inquiries is not an automatic bar to class certification, it raises a serious predominance issue here.  *See Ramirez*, *supra*, 301 F.R.D. 408, 425 (N.D. Cal. 2014) (declining to certify CCRA damages class).   More fundamentally, however, in the absence of a viable basis to pursue a class action under federal law, this not an appropriate forum to pursue a class action under California law involving solely a California class.

**IT IS SO ORDERED**.

Dated:   November 18, 2016

_____
RICHARD SEEBORG
United States District Judge